IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHRIS BHATTI,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. **3:14-CV-3445-L** |
| **CONCEPTS AMERICA INC. c/o** | § | |
| **RESTAURANTS-AMERICA,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendants Concepts America, Inc. c/o Restaurants-America and Prime Bar Greenway, LLC's Motion for Summary Judgment (Doc. 45), filed March 18, 2016; and Plaintiff's Motion to Enforce Scheduling Order (Doc. 64), filed June 30, 2016. After carefully considering the motions, briefs, evidence, evidentiary objections, the record, and applicable law, the court **grants in part and denies in part** Defendants Concepts America, Inc. c/o Restaurants-America and Prime Bar Greenway, LLC's Motion for Summary Judgment (Doc. 45). The Motion for Summary Judgment is **granted** with respect to Plaintiff's claim under 42 U.S.C. § 1981 and his state law claims against Defendants Concepts America, Inc. c/o Restaurants-America; Restaurants-America; and Prime Bar Greenway, LLC, and these claims are **dismissed with prejudice**. With respect to Plaintiff's claim under 42 U.S.C. § 2000a, the Motion for Summary Judgment is **granted** to the extent the claim is based on disparate impact and **denied** to the extent the claim is based on disparate treatment. Plaintiff's Motion to Enforce Scheduling Order (Doc. 64) is **granted**, and the court **vacates** the July 28, 2016 pretrial conference and the August trial setting pending the parties'

participation in mediation in accordance with the First Amended Mediation Order (Doc. 41) by the date set forth in this opinion.

## I.     Factual and Procedural Background

On September 23, 2014, Plaintiff Chris Bhatti ("Plaintiff" or "Bhatti") brought this action against Defendants Concepts America, Inc. c/o Restaurants-America ("CA"); Restaurants-America ("RA"); Restaurants-America Consulting Group, Inc.;[1] Prime Bar Greenway, LLC ("Prime Bar"); and Michael Browning ("Brownnig").  Plaintiff alleges federal claims under 42 U.S.C. §§ 2000a and 1981 for racial discrimination and state law claims of general negligence, premises liability, gross negligence, assault and battery, and intentional infliction of emotional distress ("IIED").  Plaintiff sued Browning for assault and battery and IIED.  Plaintiff's claims against Defendants CA, RA, and Prime Bar include all those asserted, except for assault and battery.[2]  Plaintiff seeks compensatory and punitive damages, attorney's fees, and other such relief that the court deems just and proper.

Plaintiff's claims arise from and pertain to an altercation that occurred at Prime Bar between Bhatti and Browning on October 20, 2012, that ended with Browning throwing a bar glass, which struck Bhatti in the face.  As a result of the altercation, Browning was arrested and pled "no contest" to a Class A Misdemeanor assault charge.  Bhatti received a citation for disorderly conduct that was later dismissed because the citing officer did not appear for the court hearing on the citation.

---

[1] On May 8, 2016, Plaintiff voluntarily dismissed without prejudice his claims against Defendant Restaurants-America Consulting Group, Inc.

[2] Although not specifically alleged in the First Amended Complaint, it appears that Plaintiff seeks to hold Defendants CA and RA vicariously liable for Prime Bar's conduct, except with respect to his premises liability claim, for which he specifically alleges that CA and RA are liable as owners or possessors of Prime Bar.  Plaintiff refers collectively to CA, RA, and Prime Bar as "Prime Bar" throughout his pleadings; however, there are no pleadings that tie CA and RA to the conduct and claims alleged, except for his allegation in support of his premises liability claim that CA and RA are owners and possessors of Prime Bar.  RA and CA have not moved for judgment on this basis.  The notation is made only for clarification purposes.

**Memorandum Opinion and Order – Page 2**

The essence of Bhatti's federal claims is that he was discriminated against by Prime Bar based on his race because: Prime Bar did nothing to prevent or intervene in the altercation between him and Browning; forcibly removed him from the bar while allowing Browning to remain; refused to provide him with first aid treatment; failed to offer help or telephone the police after the incident; and failed to comply in all respects with its internal policy for dealing with patron incidents. Bhatti contends that Browning was noticeably intoxicated and acted violently, but Prime Bar did not stop serving him alcohol or ask him to leave even after the altercation. Bhatti asserts that, instead, Prime Bar deemed him to be the aggressor because, as he was being escorted outside, "a Prime Bar representative . . . told [him] that 'we don't want your kind here' and 'you people come here and never buy drinks.'" Pl.'s Am. Compl. 4. When deposed, Bhatti could not recall this exact statement being made and was unable to remember what was actually said to him as he was being escorted out of the bar, but he believed that the "general tone" of what was said to him was "racially driven" because Prime Bar insisted that he leave the premises immediately after the altercation while allowing Browning to remain and refused to listen to his side of the story or take action against Browning. *See* Pl.'s App. 30-32. Bhatti was not aware that Prime Bar had a policy of requiring both persons who were involved in an altercation to leave the bar separately, at different times and through different exits, to prevent the parties from encountering each other outside and rekindling their fight in front of the bar. Bhatti's state law claims are based on his contention that Prime Bar owed him a duty of care and breached that duty by failing to intervene and protect him from being assaulted by Browning, another patron at the bar, despite witnessing the entire verbal and physical altercation.

**Memorandum Opinion and Order – Page 3**

On March 18, 2016, Defendants CA, RA, and Prime Bar, which the court refers to collectively as "Defendants" or "Prime Bar Defendants," moved for summary judgment on Plaintiff's federal and state law claims against them.  Plaintiff responded to the summary judgment motion on April 8, 2016.  The Prime Bar Defendants filed their reply brief on April 15, 2016, together with objections to Plaintiff's summary judgment evidence.  Plaintiff responded to the objections on April 22, 2016.

## II.    Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden

of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   Analysis

### A.   Plaintiff's Contentions Regarding Inadequate Time for Discovery

Bhatti contends that sufficient time has not passed for him to conduct discovery necessary to develop facts for use in responding to Defendants' summary judgment motion.  Plaintiff asserts that he requested discovery from Prime Bar in August 2015, but "Defendants" never responded to the discovery or provided an explanation for the failure to do so.  Pl.'s Resp. 7.  Specifically, Bhatti asserts that he "requested information regarding previous complaints of discrimination, training obtained by two witnesses to the assault (Hines and Markowitz), previous assaults, and policies and procedures for Prime Bar," and he attaches his August 2015 discovery requests to Defendants to show that such information was requested. *Id.*  Instead of requesting a continuance under Federal Rule of Civil Procedure 56(d), Plaintiff contends that Defendants' summary judgment motion should be denied outright because discovery needed for him to respond to Defendants' motion and raise a genuine dispute of material fact has not been provided. For support, Plaintiff relies on *Portland Retail Druggists Association v. Kaiser Foundation Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981).

The Ninth Circuit case cited by Bhatti is not binding precedent and is factually distinguishable from this case.  Unlike this case, *Portland Retail Druggists Association* involved the appeal of an order in which the district court considered matters outside the pleadings in deciding a Rule 12(b)(6) motion and treated the motion as one for summary judgment.  Moreover, Plaintiff had more then one year to conduct discovery in this case before Defendants filed their summary judgment motion.  Additionally, all case deadlines, including the dispositive motion and discovery deadlines, were extended at Plaintiff's request, and the court gave Plaintiff four months more than requested to conduct discovery.  Further, the extended deadline to conduct discovery expired March

4, 2016, and the deadline to file motions to compel discovery expired March 11, 2016.  At no time before expiration of these deadlines or before Defendants filed their summary judgment motion on March 18, 2016, did Plaintiff seek to compel discovery from Defendants or further extend the discovery deadline and dispositive motion deadlines.

Thus, even if the court construes Bhatti's discovery contention as a request for continuance under Rule 56(d), he has not shown that he diligently pursued discovery or an extension. *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992).  In addition, Plaintiff has not submitted an affidavit or declaration as required by Rule 56(d).  Accordingly, Plaintiff's contention that Defendants failed to respond to discovery requested by him in August 2015 is not a basis for denying Defendants' summary judgment motion outright or granting him a continuance under Rule 56(d).

### B.     Relevant Undisputed Facts

The court now sets forth the following facts based on the standard set forth in Section II of this opinion:

1.     Prime Bar is a bar and restaurant located at 2520 Cedar Springs Road, Dallas, Texas, 75201.

2.     Bhatti is an Indian-American.  After a business dinner, Bhatti and business colleague Thomas Seth Williams ("Williams") patronized Prime Bar on the evening of October 20, 2012.

3.     Browning is Caucasian.

4.     Bhatti and Williams, upon coming into Prime Bar, approached the bar to order drinks and then find a seat to enjoy the atmosphere of the bar.

5.      After purchasing a drink, Bhatti accidentally bumped into Browning, another bar patron, causing Browning to spill his drink on himself. This contact occurred in a small, congested, noisy area in front of the bar in which loud music was playing.

6.      Bhatti apologized to Browning.

7.      Browning responded angrily that Bhatti should watch where he was going, and called Bhatti an "Obama supporter" and a "f---ing sand n----r."[3] Pl.'s App. 24. According to Williams, the verbal exchange between Browning and Bhatti lasted one to two minutes.

8.      When Bhatti saw his apologies and effort to resolve the matter were futile, he turned to walk away.

9.      As Bhatti turned to walk away, Browning threw a beverage glass, which struck and cut Bhatti below the eye and caused his nose to bleed.

10.     Prime Bar employee and bar manager Alex Hines ("Hines") was standing behind Bhatti and Browning with his back to them during the one to two minutes that Browning yelled at Bhatti. Hines thought Bhatti was the aggressor based on what he witnessed. Hines testified that, although he was in close proximity to Browning and Bhatti, he did not hear the verbal

---

[3] The quotations in paragraph 7 above are from Bhatti's deposition. As noted, these racial slurs were made by Browning, not the Prime Bar Defendants, who are not affiliated in any way with Browning, although Plaintiff attempts to blur the distinction between Browning and the other Defendants. The Prime Bar Defendants objected to all of Bhatti's deposition testimony included in Plaintiff's Exhibit No. 2 on hearsay grounds because it was not accompanied by "the officer's certificate" as required by Rule 30(f)(1) of the Federal Rules of Civil Procedure. Plaintiff responds that Rule 30(f) in inapplicable because it applies to the duties of the court reporter who took the deposition. Plaintiff further asserts that Defendants rely on some of the same deposition testimony. Defendants do not cite any case authority, and the court is not aware of any that supports their contention that Bhatti's deposition testimony is hearsay for failure to include the court reporter's certificate. Rule 30(f)(1) by its express terms simply sets forth the certification and delivery procedure for depositions and requires the court reporter or officer to certify that the witness was sworn and the that the deposition accurately reflects the witness's testimony. Perhaps, the appropriate objection to this evidence is lack of authentication. Because the cover page and beginning of the deposition is missing, it is not readily apparent that the deposition testimony is that of Bhatti. The deposition, however, was not objected to on this ground; nor do Defendants contend that Bhatti's deposition testimony is inadmissible because it contains inadmissible hearsay. The court, therefore, does not consider these grounds and **overrules** Defendants' hearsay objection to Plaintiff's Exhibit No. 2 based on Rule 30(f)(1).

**Memorandum Opinion and Order – Page 8**

altercation because he was facing the other direction and the bar was crowded and noisy. Hines testified and reported to the police that he first noticed the altercation when he turned his head in Bhatti's and Browning's direction and saw Bhatti throw his drink on Browning, which was followed by Browning throwing his bar glass at Bhatti.  Bhatti denies throwing his drink on Browning after being insulted.  Hines could see that Bhatti's nose was bleeding. Hines was standing close enough to get wet when Browning threw the glass at Bhatti.

11.   Bhatti does not know whether Hines heard what occurred before Browning threw the glass at him. According to Bhatti, the entire incident from beginning to end lasted approximately three to five minutes.

12.   Immediately following the altercation, Williams approached someone, whom he believed was employed by Prime Bar, for help and was asked to leave the premises.  Hines, who witnessed the physical altercation between Bhatti and Browning, called security for assistance. While waiting for assistance from security, Bhatti and Browning argued back and forth.  According to Hines, the physical altercation that he witnessed before calling security lasted less than one minute.   After the physical altercation, Browning and Bhatti were separated.

13.   Bhatti was escorted out the front door of the bar by Prime Bar's security, while Browning was allowed to remain inside.  Williams followed Bhatti outside.  Bhatti testified that the person who escorted him outside the bar was hostile towards him, and he believed that the

person spoke to him in a discriminatory tone because of his race, but he was unable to recall

exactly what was said or who made the statements.[4]

14.    Hines contacted Matt Markowitz ("Markowitz"), his manager on duty for the evening, after

Bhatti insisted that the police be called. Bhatti testified that he called the police because

Prime Bar would not do so.  Hines explained that Prime Bar normally does not involve law

enforcement when bar fights occur unless there is property damage to the bar or the situation

---

[4] Williams also states in his affidavit that an unidentified "representative" of the bar, "who seemed like a bouncer," spoke to Bhatti in a rude and "racially charged manner" and "sarcastically [said] 'good luck' to Bhatti as he forcefully pushed him out of the Bar." Pl.'s App. 35.  In addition, Williams states that he heard the same unidentified "Prime Bar representative" tell Bhatti: "We do not like your people here, because you don't buy drinks." *Id.* "Based on the tone and context of the statement, [Williams] took the term "your people" to mean [that the representative was] referring to Chris Bhatti's ethnic origin." *Id.* Defendants objected to these and other statements in Williams's affidavit on hearsay and speculation grounds.  Plaintiff responded that these specific statements by Williams are admissible under Federal Rules of Evidence "801-803" because Williams had direct knowledge of the statement and observed the events that occurred, and the statements constitute admissions by a party opponent and a statement against interest by "Prime Bar's representatives." Pl.'s Resp. to Defs.' Obj. 3, 5-6.  Other than this cursory response, Plaintiff does not explain why Williams's statements qualify as nonhearsay or exceptions to the hearsay rule under Rules "801-803." *Id.* at 3.  While Rule 801(d)(2) removes certain statements from the definition of hearsay if made by a person whom the party authorized to make a statement or when the statement is made by the party's agent or employee on a matter within the scope of that relationship, Plaintiff has not pointed to evidence in response to Defendants' objection that shows that the person, who made the statements to him as he was being escorted out of the bar, was authorized by Prime Bar to make such statements or whether the statements were made by a Prime Bar agent or employee on a matter within the scope of that relationship.  Moreover, a statement by a purported agent or person with authority "does not by itself establish the declarant's authority" or "the existence or scope of the relationship." Fed. R. Evid. 801(d)(2)(A)-(E); *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 633 (5th Cir. 2015) (per curiam) (unpublished).  Thus, Plaintiff cannot use Williams's hearsay statements to both establish the declarant's authority or the existence and scope of any agency or employment relationship, while at the same time removing the same statements from the definition of hearsay.  *Id.* Further, Plaintiff has not provided the court with other information necessary for it to determine if he is relying on another basis under Rule 801(d)(2) or a hearsay exception under Rule 803. Accordingly, the court does not consider these statements by Williams in ruling on Defendants' motion and **sustains** Defendants' hearsay objections to these statements by Williams.  In addition, the court does not consider the following statements by Williams: "Based on information and belief, I believe that Prime Bar's actions and inaction towards Bhatti were motivated by race. . . . It was clearly apparent Prime Bar's representatives treated Bhatti different from Browning, the known aggressor, based on race." Pl.'s App. 36. Such statements constitute opinion testimony and unsupported speculation and are not competent summary judgment evidence because "Rule 56(e) requires statements in affidavits to be based on personal knowledge and not based on information and belief." *In re Dengel*, 340 F.3d 300, 313 (5th Cir. 2003) (citation omitted).  While Plaintiff contends that Williams has personal knowledge of the matters asserted, and Williams states at the beginning of his affidavit that it is made on personal knowledge, the statement in paragraph 25 of his affidavit regarding his belief "[b]ased on information and belief" that Prime Bar's conduct was motivated by race undercuts any assertion of personal knowledge by him as to this matter.  Accordingly, Defendants' objections to these statements are **sustained.**  The court also **sustains** Defendants' hearsay objection to the following statement by Williams to the extent he asserts that racial slurs were directed at Bhatti by unidentified persons outside the bar: "While Bhatti was standing outside, [unidentified] individuals were shouting racial slurs to Bhatti, to which Prime Bar took no action to reduce or stop."

is one that the bar cannot handle, such as a "big brawl" involving multiple persons that gets out of control.  Pl.'s App. 41-42.  Markowitz further explained that the bar only prepares an incident report when there is property damage or if police presence is requested to assist with an incident at the bar or restaurant.  Bhatti did not complain about or mention the conduct, language, or tone of Prime Bar's security staff to Hines or Markowitz.

15.     Markowitz did not witness and was unaware of the verbal or physical altercation until Hines brought it to his attention.  Markowitz spoke with Bhatti outside of Prime Bar's front entrance while the bar's staff and management dealt with Browning inside the bar.  At some point, Williams went back inside the bar but did not see any Prime Bar employees standing near Browning or taking action against him.  Bhatti testified that he believed that Markowitz or another unidentified Prime Bar employee with whom he spoke outside the bar was also discriminating against him based on his race because the person would not listen to his side of the story or let him back inside the bar while Browning, who Bhatti contended was the aggressor, was allowed to remain inside.

16.     Markowitz testified that while outside the bar, Bhatti was irate, loud, insulting, condescending, and disrespectful, particularly whenever he saw someone from Browning's party leaving from the back of the bar or waiting for a valet.  According to Williams, unidentified persons, presumably from Browning's party, also shouted at Bhatti, and Prime Bar took no action.  Markowitz attempted to calm Bhatti down and testified that Bhatti's conduct "was starting to be a disruption to the [bar's other] guests."  Defs.' App. 30. Markowitz at one point talked to Bhatti and Browning separately after the altercation and recalled Browning being calm and Bhatti acting aggressively.  Markowitz's only knowledge

of the altercation itself was based on the information provided to him by Bhatti and Browning.

17.    Markowitz explained Prime Bar's policy for the removal of patrons who are involved in an altercation.  He testified that, for safety reasons, patrons are separated from each other and then removed from the premises separately, through different exits, and at different times to prevent the altercation resuming outside the bar. Markowitz testified that Prime Bar's policy is to remove both parties involved in an altercation, one before the other, and the patron who is the aggressor or closest to a bar exit is usually removed first in an attempt to de-escalate the situation.  Markowitz explained that, even when a patron is not involved in an altercation, he or she will be required to leave the bar if that person is being "disruptive, loud, still [sic] seeming [to be the] aggressor, whether or not [the patron was involved] in the altercation." Defs.' App. 33.  On the night of the incident, Bhatti was not aware that Prime Bar had a policy of removing both patrons involved in an altercation separately, one before the other.

18.    Markowitz did not know why Bhatti was removed from the bar first, but testified that the reason he was not allowed to return inside was "because of the way he acted outside." *Id.* Markowitz recalled Browning being more calm and thought that was the reason he was allowed to remain inside the bar until law enforcement arrived, whereas Bhatti was escorted out of the bar and not allowed by Markowitz to return inside because of the way he was acting outside in an "[i]rate, insulting, condescending[,]" and "aggressive" manner. *Id.* at 33-34.

19.   Markowitz stayed with Bhatti to monitor the situation outside until law enforcement arrived, and Browning was arrested and placed in a police car.  Markowitz testified that, had Bhatti left the premises after being escorted outside and before the police arrived, this would have been a good time to allow Browning to leave without further confrontation; however, because of police involvement and Bhatti's insistence on remaining until the police arrived, Markowitz believed that it was better to have both parties remain at the bar in separate areas until they could both speak to the police and give their account of what occurred.

20.   After his arrest, Browning was charged with assaulting Bhatti and eventually pled "no contest" to a Class A Misdemeanor assault charge.  Bhatti received a citation as a result of the incident for disorderly conduct that was later dismissed when the citing officer did not appear for the court hearing.  There is no competent evidence that either Bhatti or Browning was intoxicated on the night in question before the altercation occurred.

C.    **Claim Under 42 U.S.C. § 1981 (Count II)**

1.    **Law Applicable to § 1981 Claims**

"Section 1981 does not provide a general cause of action for race discrimination." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) (footnote omitted).  It instead "prohibits intentional race discrimination with respect to the enumerated activities in the statute. *Id.* Section 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). "Although § 1981 does not itself use the word 'race,' the [Supreme] Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987). At issue in Defendants' summary judgment motion is Bhatti's ability "to make and enforce contracts" on nondiscriminatory terms. 42 U.S.C. § 1981(a).

Claims under 42 U.S.C § 1981 are analyzed in the same manner as Title VII claims. *Pratt v. City of Houston*, 247 F.3d 601, 606 n.1 (5th Cir. 2001). To establish a section 1981 claim, "the plaintiff must prove discriminatory intent." *Mason v. United Air Lines, Inc*., 274 F.3d 314, 318 (5th Cir. 2001) (footnote omitted). Discriminatory intent can be established with direct or circumstantial evidence of discrimination. *Jatoi v. Hurst-Euless-Bedford Hosp. Auth*., 807 F.2d 1214, 1219, *modified on denial of reh'g*, 819 F.2d 545 (5th Cir. 1987). When there is no direct evidence of discriminatory intent, circumstantial evidence of discrimination under 42 U.S.C. § 1981 is examined using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bright v. GB Bioscience Inc*., 305 F. App'x 197, 201 (5th Cir. 2008) (per curiam) (unpublished).

"Under this framework, a plaintiff first creates a presumption of intentional discrimination by establishing a prima facie case." *Id*. (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). "The burden then shifts to the employer to articulate one or more legitimate, nondiscriminatory reasons" for its conduct. *Bright*, 305 F. App'x at 201 (citing *McDonnell Douglas*, 411 U.S. at 8027). "If the [defendant] meets that burden, the prima facie case dissolves and the

**Memorandum Opinion and Order – Page 14**

[plaintiff] must demonstrate either that 'a discriminatory reason more likely motivated the [defendant] or . . . that the [defendant's] proffered explanation is unworthy of credence.'" *Bright*, 305 F. App'x at 201 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). To establish a prima facie case of discrimination under 42 U.S.C. § 1981, a plaintiff must show that: (1) he is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned an activity enumerated in the statute. *Dunaway v. Cowboys Nightlife, Inc.,* 436 F. App'x 386, 390 (5th Cir. 2011) (unpublished) (citing *Arguello*, 330 F.3d at 358).

## 2.    Discussion

Bhatti's claim under 42 U.S.C. § 1981 is based on his contention that Prime Bar intentionally discriminated against him based on his race by treating him in a discriminatory and unequal manner in comparison to Browning, a Caucasian patron, before and after the altercation with Browning on the night of October 20, 2012.

Defendants contend that Bhatti's claim under section 1981 fails because, even assuming for purposes of their summary judgment motion that he is a member of a protected class, he cannot establish that Prime Bar intentionally discriminated against him on the basis of race with respect to any matter covered by the statute. Defendants assert that Bhatti's contention that Prime Bar treated him differently from Browning on the basis of race by not interceding to prevent Browning from assaulting him after Browning made racially-charged insults, removing him from the bar after the altercation while not disciplining Browning, and making racially-charged comments while removing him from the bar, are based on his unsupported "feelings of racial discrimination" and speculation. Defs.' Mot. 8.

Defendants further contend that there is no competent summary judgment evidence that Prime Bar was aware of any racial comments made by Browning to Bhatti before the physical altercation and no evidence that Prime Bar made racially-charged comments to Bhatti when he was removed from the bar.  Defendants assert that Prime Bar acted in accordance with its policy for handling altercations between bar patrons in separating the two parties and escorting Bhatti outside the bar. In addition, Defendants contend that they are entitled to judgment on Bhatti's section 1981 claim because there is no evidence that he suffered the loss of any contract interest.[5]  Defendants, therefore, assert that Bhatti cannot establish a prima facie case of discrimination, and  they are entitled to judgment on his section 1981 claim.

Plaintiff responds that there is "ample evidence" that Prime Bar intentionally discriminated against him based on race as follows:

> Bhatti was subjected to discriminatory acts by Prime Bar, including but not limited to Prime Bar's failure to offer help when requested, failure to follow its own policy and call the police, throwing Bhatti out of the premises as an aggressor rather than victim, allowing the assailant, Browning, to remain on the premises without any restraint or consequence, and making racially derogatory comments to Bhatti.

Pl.'s Resp.  According to Bhatti, "This evidence alone suffices to create a jury question regarding whether Prime Bar intentionally discriminated against [him] on the basis of race." *Id.*  Plaintiff contends that Prime Bar's policy reasons for its treatment of him and Browning are a pretext for discrimination because Prime Bar did not, in accordance with its policies for handling altercations, create an incident report, offer Bhatti medical attention, or call the police after the incident.

---

[5] The parties dispute at length in their summary judgment briefs whether Bhatti lost a contract interest as a result of Prime Bar's decision to remove him from the bar after the altercation with Browning, although Bhatti's pleadings contain no allegations regarding the loss of a contract interest and instead focus only on Prime Bar's alleged unequal treatment of him compared to the treatment Browning received after the altercation.  In any event, the court need not address the contract interest issue because, as herein explained, it concludes that Plaintiff has failed to raise a genuine dispute of material fact as to whether Prime Bar intentionally discriminated against him on the basis of race.

**Memorandum Opinion and Order – Page 16**

For the reasons already explained, the court does not consider Plaintiff's evidence or contention that an unidentified Prime Bar representative made racially-charged or motivated comments to him while escorting him out of the bar.   The court also does not consider Williams's unsupported belief that Prime Bar's treatment of Bhatti or failure to take action against Browning was motivated by or because of Browning's or Bhatti's race.   Because Plaintiff has not come forward with competent evidence of direct discrimination by Defendants, the *McDonnell Douglas* framework applies to his federal discrimination claims under section 1981, and he must establish a prima facie case of discrimination.   Plaintiff presented circumstantial evidence of Browning's racial slurs to him and Hines's close proximity to the altercation.   It is also undisputed that, after the altercation, Browning was allowed to remain inside the bar while Bhatti was required to leave the premises and not allowed to return inside.

Viewing all facts and inferences in the light most favorable to Bhatti, this evidence, at most, establishes only that Browning, not Prime Bar, made racial slurs to Bhatti, and Browning and Bhatti were treated differently after their altercation.   Further, Bhatti's subjective belief that the following actions by Prime Bar were racially motivated is based on nothing more than speculation: not preventing or not interceding in the altercation sooner; deeming him rather than Browning to be the aggressor; removing him from the bar after the altercation while allowing Browning to remain inside; not allowing him to return inside the bar; unwillingness to listen to or accept his version of events; not telephoning the police; not offering him medical care; and not taking action when unidentified persons, presumably from Browning's party, shouted at him outside the bar. Accordingly, Plaintiff has not shown by competent evidence that Prime Bar's actions were more

likely than not attributable to unlawful intentional discrimination on the basis of race as opposed to Prime Bar's perception, whether correct or not, regarding Bhatti's role in the altercation with Browning, and Bhatti's combative conduct after being removed from the bar.  Accordingly, Plaintiff has failed to establish a prima facie case of discrimination. Defendants are, therefore, entitled to judgment as a matter of law on Plaintiff's claim under 42 U.S.C. § 1981, and the court need not address the parties' contentions as to whether Defendants' proffered legitimate business reason is a pretext for discrimination or whether Bhatti lost a contract interest as a result of Prime Bar's decision to remove him from the bar after the altercation with Browning.

### D.     Claim Under 42 U.S.C. § 2000a (Count I)

#### 1.     Law Applicable to § 2000a Claim

Section 2000a, also referred to as "Title II," prohibits intentional discrimination or segregation in places of public accommodation and provides:   "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a); *Arguello v. Conoco*, *Inc.*, 207 F.3d 803, 813 (5th Cir. 2000) (explaining that, like section 1981, Title II prohibits intentional discrimination).  "As with a 42 U.S.C. § 1981 claim, a plaintiff can use either direct or circumstantial evidence to prove a case of Title II discrimination." *Dunaway,* 436  F. App'x at 398 (citing *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 349 (5th Cir. 2008) (footnote omitted).  Direct evidence of discrimination is evidence "that, if believed proves the fact of discriminatory animus without inference or presumption."  *Id.* (quoting *Rachid v. Jack*

*In The Box*, 376 F.3d 305, 310 n.6 (5th Cir. 2004)). The standard for a prima facie case under section

2000a varies slightly from that under section 1981, but section 2000a claims are "subject to the same

burden-shifting analysis as a 42 U.S.C. § 1981 claim" when there is no direct evidence of

discrimination. *Dunaway,* 436 F. App'x at 398-99 (citation and footnote omitted).

If the plaintiff establishes a prima facie case of discrimination, the "defendant may present

legitimate, non-discriminatory reasons for its actions, which the plaintiff may then rebut by

presenting evidence that the proffered reason is pretext for discrimination." *Id.* A plaintiff

establishes a prima facie case of discrimination under section 2000a by showing that: "(1) he is a

member of a protected class; (2) he attempted to contract for the services of a public accommodation;

(3) he was denied those services; and (4) those services were made available to similarly situated

persons outside his protected class." *Id.* at 398-99, n.14 (citing *Fahim*, 551 F.3d at 350).

## 2.    Discussion

Defendants contend that Bhatti cannot establish a prima facie case of discrimination under

42 U.S.C. § 2000a and that they are entitled to judgment on Bhatti's Title II claim based on the

following reasoning:

> Even liberally construed, Bhatti's complaint does not contain allegations that
> Defendants intended to deprive, interfere with, or punish him for exercising his rights
> and privileges under § 2000a. Rather, Bhatti alleges only that Defendants denied him
> of his "right to full and equal enjoyment of Prime Bar's business establishment" and
> does not provide the reasons for doing so. Bhatti has offered nothing more than
> conclusory assertions that "Prime Bar has a pattern and practice of discriminatory
> actions towards customers and/or potential customers based on race and/or national
> origin." Pl.'s Am. Compl. ¶ 26. Assuming, *arguendo*, Bhatti had provided any
> evidence for this assertion, he has wholly failed to provide any evidence, or even
> assert, that Defendants' policies or practices have a discriminatory impact on a
> particular group. *Arguello*, 207 F.3d at 813. Accordingly, whether Bhatti's § 2000a
> claim is viewed under adisparate treatment or a disparate impact theory, his §2000a

claim must fail. *See, e.g., Arguello*, 207 F.3d at 813 (affirming district court's dismissal of 42 U.S.C. § 2000a claims where "plaintiffs failed to allege that there was a specific . . . policy which had a negative disparate impact on minority customers" and recognized that "six specific incidents of racially discriminatory treatment . . . do not establish any widespread or general effect on minority consumers"); *McCoy*, 390 F. Supp. 2d at 585 (granting summary judgment dismissing plaintiff's 42 U.S.C. § 2000a claim who failed to present any evidence demonstrating either a disparate impact or disparate treatment as a result of defendants' allegedly discriminatory policies).

Defs.' Mot. 10-11.

Plaintiff in response does not specifically address Defendants' contention that his section 2000a claim fails because he does not allege or have evidence to support a discrimination claim based on disparate impact. He instead contends that the case relied on by Defendants, *Arguello v. Conoco, Inc.*, is factually distinguishable. Bhatti also contends that Defendants are not entitled to summary judgment on his Title II claim because it is based on disparate treatment and his allegation that he has alleged that Prime Bar treated him in a discriminatory manner and deprived him of his right to full and equal enjoyment of Prime Bar's business. In this regard, Bhatti asserts that he "is a member of a protected class. As provided herein, Bhatti attempted to exercise the right to full benefits and enjoyment of Prime Bar, a place of public accommodation. Also evidenced herein, Bhatti was denied benefits and enjoyment, which Browning, a Caucasian patron got to enjoy, despite causing injury to Plaintiff." Pl.'s Resp. 14.

In their Reply, Defendants contend that Bhatti's section 2000a claim based on disparate treatment fails because he has not established that "he was deprived of any benefit, privilege, term or condition that Browning received." Defs.' Reply 4-5. In support of this argument, Defendants assert as follows:

> Plaintiff alleges that he was deprived of the benefits, privileges, terms and conditions
> because Prime Bar Browning, did not intercede
> in the altercation between Browning and Bhatti, and told Bhatti "we don't want your
> kind here." According to Prime Bar's policy regarding patrons involved in an
> altercation, the patrons are immediately separated and are removed from the premises
> separately to prevent the altercation from resuming outside. Ex. 3, Markowitz Dep.
> 108:24-110:20. The policy is to remove the patron closest to an exit first. *Id.*
> 64:17-65:12. In this case, Plaintiff was removed first, Prime Bar contacted law
> enforcement, and once law enforcement arrived, Browning was released to them and
> was arrested. *Id.* at 110:18-20; 82:4-5; 123:3-9. Prime Bar's security stayed with
> Browning to monitor the situation while law enforcement arrived. *Id.* at 123:1-9.
> Bhatti has failed to provide any evidence that Browning got to enjoy any alleged
> benefits or privileges that Bhatti did not. Both patrons were separated and detained
> by Prime Bar security in separate places after the altercation, pursuant to Prime Bar's
> policy.

*Id.* at 4.

The court is somewhat perplexed by Defendants' summary judgment arguments regarding

Plaintiff's Title II claim. Defendants initially asserted that they are entitled to Plaintiff's Title II

claim because he has only pleaded a claim based on disparate impact and has no evidence to support

such a claim. In this regard, Defendants correctly note that Bhatti alleges as follows in his First

Amended Complaint: "Prime Bar has a pattern and practice of discriminatory actions towards

customers and/or potential customers based on race and/or national origin." Defs.' Mot. 10-11

(quoting Pl.'s First Am. Compl. ¶ 26). It is clear from Bhatti's pleadings, however, that his Title II

public accommodation claim is also based, at least in part, on his contention that Prime Bar

discriminated against him personally on the basis of race in violation of section 42 U.S.C. § 2000a.

*See id.* ¶¶ 27-30.

Because Defendants only moved initially for summary judgment on Bhatti's section 2000a

claim based on a disparate impact theory, Bhatti had no burden to come forward with evidence to

raise a genuine dispute of material fact in support of his section 2000a claim based on disparate treatment in response to Defendants' summary judgment motion. While Defendants also contend that Bhatti cannot establish that he was denied any benefits or privileges extended to Browning, the court cannot consider this argument in deciding whether they are entitled to judgment on Bhatti's Title II claim because it was raised for the first time in their reply brief. *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004) (explaining that a district court may not grant summary judgment on grounds raised for the first time in a summary judgment reply and to which the nonmovant has not been able to respond).  Moreover, notwithstanding Defendants' policy reasons for its handling of the altercation, which was also raised for the first time in their reply with respect to the section 2000a claim, the undisputed evidence establishes that Bhatti was removed from the bar after the altercation while Browning was allowed to remain inside.  Thus, contrary to Defendants' contention, Bhatti was denied a service or accommodation that was extended to Browning.  Regardless, this argument misses the mark, as the focus should be on  whether Bhatti was removed from the bar after the altercation *on the basis of his race*.  For theses reasons and because Defendants' arguments regarding Plaintiff's section 2000a claim based on disparate treatment were raised for the first time in their reply, the court concludes that summary judgment is not appropriate on this ground.

The court, nevertheless, determines that Defendants are entitled to judgment on Plaintiff's section 2000a claim based on a disparate impact.  Although Bhatti's First Amended Complaint contains allegations of disparate treatment and impact, he asserts in response to Defendants' summary judgment motion that his section 2000a claim is based on his contention that Prime Bar treated him in a discriminatory manner.  He also failed to point to any evidence to support a claim

based on disparate impact. *See* Pl.'s Resp.13-14. The court, therefore, concludes that he has abandoned his section 2000a claim based on disparate impact and is proceeding only under a disparate treatment theory of discrimination. The court also notes that is unclear whether disparate impact claims are even cognizable under section 2000a. *See Arguello*, 207 F.3d at 813 ("Neither the Supreme Court nor this court has addressed the question of whether disparate impact claims are cognizable under Title II. Furthermore, the law in the other circuits is generally unclear as to whether disparate impact claims are recognized under Title II.") (footnote omitted).

Accordingly, Defendants are entitled to judgment on Plaintiff's Title II claim based on disparate impact, and Plaintiff's Title II claim based on disparate treatment remains for trial.

### E.    General Negligence (Count III)

The Prime Bar Defendants contend that Plaintiff's claim for general negligence (Count III) fails as a matter of law and should be dismissed because Texas law distinguishes between negligence and premises liability theories. Defendants contend that Plaintiff's negligence claim, as pleaded, is actually a premises liability claim and, therefore, Counts III and IV of Plaintiff's Amended Complaint for general negligence and premises liability should be evaluated as a single premises liability claim. The Prime Bar Defendants also assert that Texas courts have consistently evaluated claims stemming from bar fights or altercations at dram shops under a premises liability theory.

Negligence and premises liability are separate claims under Texas law. *See Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1999). "[N]egligent activity encompasses a malfeasance theory based on *affirmative*, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a *nonfeasance* theory based on the owner's

failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) (emphasis added) (footnotes omitted).  Based on this reasoning and distinction between negligence and premises liability claims, the Texas Supreme Court in *Del Lago* concluded that the bar patron plaintiff's claim against the bar for failure to provide adequate security and to intervene and defuse a volatile situation that led to a bar fight was properly submitted on a premises liability theory.

In response to Defendants' summary judgment motion, Bhatti acknowledges that a negligence cause of action requires an injury that results from contemporaneous action of the defendant but contends that his negligence claim, which is premised on his contention that Prime Bar failed to provide him with a safe place to patronize, including the failure to not provide "adequate monitoring of its patrons, . . . adequate staffing, [and] training and options to patrons who are victims of assault." Pl.'s Resp. 19.  Because Plaintiff's negligence claim is based on Prime Bar's alleged failure to act as opposed to its engaging in affirmative contemporaneous conduct that caused his injuries, the court concludes that, in accordance with Texas law, Plaintiff's general negligence claim is actually a premises liability claim and must be construed as such.  Accordingly, the court agrees with Defendants that Plaintiff's general negligence claim (Count III) fails as a matter of law, and the Prime Bar Defendants are entitled to judgment on this claim.

### F.      Premises Liability (Count IV)

Defendants contend that they are entitled to judgment on Bhatti's premises liability claim because they did not owe a legal duty to him.  In this regard, Defendants contend that, even assuming for purposes of their summary judgment motion that Bhatti was an invitee, his injury was not

foreseeable, and there is no evidence that Prime Bar knew or should have known of an unreasonable and foreseeable risk of harm to him.  For support, Defendants rely on *Del Lago Partners, Inc. v. Smith*.

Plaintiff responds that Defendants owed a duty to him and breached that duty because "Prime Bar representatives witnessed and observed the interaction between Bhatti and Browning.  Prime Bar representatives did nothing to reduce or stop Browning's assaultive behavior against Bhatti."  Pl.'s Resp. 16.  Plaintiff further asserts that, even assuming that Hines saw Bhatti first throw a drink on Browning, Hines could have reasonably foreseen that the situation would escalate.  Plaintiff, therefore, contends that Prime Bar had "actual and direct knowledge that an altercation was imminent between two patrons holding alcoholic beverages. Moreover, as Hines was standing 2 feet away and the incident lasted between 1-5 minutes, he was well within reach of the patrons and had ample time and means to defuse the situation."  *Id.*  For the reasons that follow, the court disagrees that Prime Bar owed a duty of care to Bhatti based on the evidence relied on by him.

"In a premises-liability case, the plaintiff must establish a duty owed to the plaintiff, breach of the duty, and damages proximately caused by the breach."  *Del Lago Partners, Inc.*, 307 S.W.3d at 767 (footnote omitted).  Whether a duty exists is decided by the court as a matter of law and requires that the court take into account a number of factors, "including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant."  *Id.*  The scope of the duty owed depends on the plaintiff's status.  *Id.*  A premises owner or occupier generally "owes invitees a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm

created by a premises condition about which the property owner knew or should have known."[6] *Id.* A premises owner or occupier has no duty to protect invitees from criminal acts of third parties, unless it "knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *Timberwalk Apartments, Partners, Inc.*, 972 S.W.2d at 756;  *Del Lago Partners, Inc.*, 307 S.W.3d at 767.

"[F]oreseeability of an unreasonable risk of criminal conduct is a prerequisite to imposing a duty of care on a person who owns or controls premises to protect others on the property from the risk." *Timberwalk Apartments, Partners, Inc.*, 972 S.W.2d at 756.  When the premises owner or occupier does not have actual knowledge that criminal conduct is imminent, it may nevertheless have a duty to protect invitees if past criminal conduct made similar conduct in the future foreseeable. *Del Lago Partners, Inc.*, 307 S.W.3d at 768. Criminal misconduct by third persons may also be foreseeable in some instances "because of immediately preceding conduct."  *Id.*

In *Del Lago*, the Texas Supreme Court noted: "We have not held that a bar proprietor always or routinely has a duty to protect patrons from other patrons, and do not so hold today. Nor have we

---

[6] The term "occupier of premises" refers to the party in control of the premises.  *Howe v. Kroger Co.*, 598 S.W.2d 929, 930 (Tex. Civ. App.—Dallas 1980, no writ); *see also Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 324 (Tex. 1993) (quoting *Howe*'s definition of the phrase "occupier of premises").  An "invitee" is a person who goes on the premises of another in response to an "express or implied invitation of the owner or occupant or the business of the owner or occupant or for their mutual advantage." *Atchison, Topeka and Santa Fe Ry. v. Smith*, 563 S.W.2d 660, 666 (Tex. Civ. App.—Waco 1978, writ ref'd n.r.e.); *see also Galveston Oil Co. v. Morton*, 7 S.W. 756, 758 (Tex. 1888) (adopting the mutual advantage test of invitee status).  An implied invitation:

> is one which is held to be extended by reason of the owner or occupant doing something or permitting something to be done which fairly indicates to the person entering that his entry and use of the property are consistent with the intentions and purposes of the owner or occupant, and leads him to believe that the use is in accordance with the design for which the place is adapted and allowed to be used in mutuality of interests.

*Atchison, Topeka and Santa Fe Ry.*, 563 S.W.2d at 666.

**Memorandum Opinion and Order – Page 26**

held that a duty to protect the clientele necessarily arises when a patron becomes inebriated, or when words are exchanged between patrons that lead to a fight, and do not so hold today." *Id.* at 767. The court in *Del Lago*, nevertheless, held based on the facts of that case, that Del Lago owed a duty to protect the plaintiff, an invitee, from being assaulted by another bar customer because it "had actual and direct knowledge that a violent brawl was imminent between drunk, belligerent patrons and had ample time and means to defuse the situation. Del Lago's duty arose not because of prior similar criminal conduct but because it was aware of an unreasonable risk of harm at the bar that very night." *Id.* at 770. In this regard, the *Del Lago* court went on to explain:

> [D]uring the ninety minutes of recurrent hostilities at the bar, a duty arose on Del Lago's part to use reasonable care to protect the invitees from imminent assaultive conduct. The duty arose because the likelihood and magnitude of the risk to patrons reached the level of an unreasonable risk of harm, the risk was apparent to the property owner, and the risk arose in circumstances where the property owner had readily available opportunities to reduce it.

*Id.*

The court in *Del Lago* also concluded that a jury could have found that Del Lago breached its duty to the plaintiff "by failing to take reasonable steps to defuse the dangerous situation at the bar" or "take whatever action [was] reasonably prudent under the circumstances to reduce or to eliminate the unreasonable risk from that condition." More specifically, the court determined that a jury could have found that Del Lago breached its duty to the plaintiff because its "security failed to monitor and intervene during the extended period when the two groups in the bar were becoming more and more intoxicated and antagonistic." *Id.* at 771. Although the hostile situation in *Del Lago* occurred over an extended period of ninety minutes, the court noted that a "long and continued course of conduct [is not required] to find that the proprietor had knowledge of the violent

disposition of the other patron—all that is necessary is that there be a sequence of conduct sufficiently long to enable the proprietor to act for the patron's safety." *Id.* at 770, n.27 (quoting *Eastep v. Jack–in–the–Box, Inc.*, 546 S.W.2d 116, 118 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.)).

In this case, there is no evidence of prior similar criminal conduct occurring at Prime Bar that would make Browning's assault of Bhatti foreseeable. Thus, resolution of Defendants' summary judgment motion as to Plaintiff's premises liability claim turns on whether Prime Bar knew or had reason to know that a violent altercation between Browning and Bhatti was imminent on the night in question, and whether Prime Bar had sufficient time to defuse the situation before it became physically violent. The court has reviewed all of the evidence submitted by the parties. Assuming without deciding whether Bhatti qualified as an invitee of Prime Bar on the night in question, the court concludes that Prime Bar did not owe a duty to Bhatti to protect him from being assaulted by Browning.

Plaintiff presented evidence that Browning was upset with Bhatti, and cursed and directed racial slurs at him for one to two minutes before the altercation between them became physically violent. Unlike *Del Lago*, however, there is no competent summary judgment evidence that Browning or Bhatti was drunk[7] or had been acting belligerently *before* Bhatti bumped into Browning.

---

[7] Williams states in his affidavit that when he returned inside the bar, Browning "appeared to be drunk, aggressive, and holding a new drink." Pl.'s App. 36. This statement was objected to by Defendants as speculative. Plaintiff responds that the statement is not speculative because Williams witnessed the conduct. The court agrees with Defendants and **sustains** the objection. The statement is based solely on Williams's unsubstantiated subjective belief. Williams's affidavit does not include any facts to support his conclusory assertion that Browning "*appeared* to be drunk, aggressive, and holding a new drink." *Id.* (emphasis added). Likewise, when deposed, Bhatti could not recall any facts that would support a finding that Browning was intoxicated. He could not remember whether Browning smelled of alcohol or whether he had bloodshot eyes or was stumbling. Bhatti simply "assume[d]" Browning was intoxicated because he became "angry very quickly" when Bhatti caused him to spill his drink on himself. *Id.* at 26. Moreover,

Thus, there is no evidence that Browning or Bhatti was engaging in pugnacious conduct *before* Bhatti bumped into Browning that would have attracted the attention of Prime Bar's management, security, or employees.

Moreover, unlike *Del Lago*, there was no sufficiently extended period of time over which Browning and Bhatti became antagonistic *before* Bhatti was struck in the face with the bar glass. While Bhatti estimated that the entire incident between him and Browning took place in three to five minutes, his colleague Williams testified that the verbal altercation[8] last for only one to two of these minutes *before* the situation became physical, and Hines testified that the physical altercation itself lasted less than one minute. Taken together, Williams's and Hines's testimony regarding timing is in line with and comports with Bhatti's estimate that the entire verbal and physical altercation from beginning to end lasted at least three minutes. What is important here, however, is the amount of time that transpired before Bhatti was injured because Bhatti contends that Prime Bar could have interceded to prevent or reduce the injury that he suffered. Thus, the issue is whether Prime Bar could have interceded during the one to two minutes before the altercation became physically

---

Bhatti's statement that Browning became angry *after* he bumped into him, and Williams' statement that Browning appeared to be drinking and intoxicated at some later point in time *after* the altercation while everyone was waiting for the police to arrive is irrelevant to whether Browning was behaving in a manner *before* the verbal or physical altercation that would have put Prime Bar on notice that Browning was likely to engage in conduct that would subject Bhatti or another bar patron to an unreasonable risk of harm.

[8] Plaintiff relies on Williams's affidavit in which he states that "Browning began a lengthy, loud, and physically animated tirade of rude gestures, cursing, threats, and racial slurs for approximately 1-2 minutes. . . . During Browning's threatening tirade, I personally heard him use the words 'Sand N. . . r' and 'Obama Supporter' on multiple occasions." Pl.'s App. 35. Defendants objected to these statements by Williams as hearsay. Plaintiff contends in response to the objection that Browning's statements are admissible because Williams has personal knowledge of the statements, and the statements are admissible because they were made by Browning, a party opponent. While the statements may be admissible against Browning, who made the statements, they are not admissible against the Prime Bar Defendants because it is undisputed that Browning is not an agent or employee of Defendants. *See* Fed. R. Evid. 801(d)(2). The court, therefore **sustains** Defendants' objection to this evidence other than Williams's statement that the verbal alteration lasted for one to two minutes; however, as previously noted, similar evidence of cursing and racial slurs by Browning was presented by Plaintiff in an admissible form through his own deposition testimony.

violent, not the entire estimated time for the verbal and physical altercation.  Moreover, Bhatti acknowledges that the physical altercation only involved Browning throwing a glass at him, and not an extended fight.

Additionally, unlike *Del Lago* and *Eastep*, there is no evidence to support Plaintiff's contention that Hines or any other Prime Bar employee actually "witnessed," heard, or was aware of the verbal altercation that occurred between Browning and Bhatti during the brief one to two minutes and "continued to ignore it" before Browning threw a bar glass at Bhatti, striking him in the face.  Pl.'s Resp. 17.  Hines witnessed Browning throwing the glass at Bhatti, but he was not aware of the verbal altercation before the situation became physical, and the only evidence that Hines may have heard the verbal altercation is his close proximity to the altercation.  Despite Hines's close proximity, Bhatti was not sure whether Hines heard what transpired before Browning struck him with the bar glass, and Bhatti and Hines both testified that the altercation took place in a crowded, noisy area of the bar where loud music playing.  Hines also testified that before he turned around and witnessed Browning striking Bhatti with a bar glass, he was facing the other direction.  Accordingly, the facts of this case are distinguishable from *Eastep* in which there was no doubt that the manager and other employees of the McDonald establishment were actually aware that trouble was imminent.

Taking into account all of the circumstances leading to Bhatti's injury, including Williams's testimony that the verbal altercation lasted only one to two minutes, Bhatti's testimony that he was not sure whether Hines heard what transpired before Bhatti was struck with the bar glass, Hines's testimony that he had his back turned to Browning and Bhatti before the altercation became physical and did not hear the verbal altercation, and the undisputed evidence that the altercation occurred in

a crowded noisy area of the bar, the court determines that the incident was not foreseeable, and Prime Bar did not have ample time to defuse the situation before it became physical to prevent Bhatti's injury before the two were separated and Hines called security for assistance. Accordingly, the court concludes, as a matter of law, that Prime Bar did not owe a duty to Bhatti to protect him from being assaulted by Browning because the risk was not apparent in the short time that preceded the assault, which only involved Browning throwing a bar glass at Bhatti; the physical altercation was not a prolonged fight; and Prime Bar did not have ample opportunity to defuse the situation and thereby reduce the risk of physical injury to Bhatti. The rapid chain of events is simply too slender a reed to create a genuine dispute of material fact. As there is no genuine dispute of material fact as to the foreseeability of the assault by Browning against Bhatti, the Prime Bar Defendants are entitled to judgment as a matter of law on Plaintiff's premises liability claim.

### G.    Gross Negligence (Count V)

Defendants contend that Plaintiff's cause of action for gross negligence and corresponding request for exemplary damages fails as a matter of law because section 41.005 of the Texas Civil Practice & Remedies Code precludes the recovery of exemplary damages against a defendant for the criminal conduct of another, and none of the exceptions set forth in the statute applies to this case.

Plaintiff disagrees that the exemplary damages he seeks against the Prime Bar Defendants are barred by section 41.005 because his claim is based on Prime Bar's own gross negligence in connection with its actions or omissions on October 20, 2012. Plaintiff contends that such damages are recoverable for gross negligence under section 41.003(c) of the Texas Civil Practice & Remedies Code. Bhatti further asserts that his claim meets the elements necessary to establish gross negligence

under Texas law.  In this regard, Bhatti contends for the following reasons that Prime Bar's actions

or inaction caused an extreme risk of danger to him, and Prime Bar was actually aware of the risk

involved:

> Prime Bar's actions and/or omissions did cause an extreme risk of danger to Bhatti.
> Prime Bar allowed Browning to yell racial slurs at Bhatti and continued to watch,
> without intervening, when Browning threw his drinking glass at Bhatti, causing him
> severe injury. And, after the assault by Browning, Prime Bar acted with complete
> indifference to Bhatti's injury and the cause thereof.

> Prime Bar had actual awareness of the risk involved. Not only did Prime Bar
> representatives witness the interaction between Bhatti and Browning in close
> proximity, Bhatti informed Prime Bar of the injury. Prime Bar nevertheless
> proceeded to allow Browning to continue patronizing the bar/restaurant, while
> throwing Bhatti out of the bar, without valid reason. . . .

> Prime Bar was witness to a lengthy escalating interaction by Browning with Bhatti.
> Moreover, after getting injured, Prime Bar [sic] did not take any action, in violation
> of its policies and procedures. . . .  Prime Bar, with knowledge of the danger to
> Bhatti, proceeded and acted with no care to the risk of dangers posed by Browning.

> Prime Bar and its agents had actual awareness of the peril, but Prime Bar acted and
> failed to act in a way to clearly demonstrate they did not care about Bhatti's
> well-being or safety.

Pl.'s Resp. 24-25.

Section 41.005 of the Texas Civil Practice & Remedies Code applies to awards of damages

in cases involving harm resulting from criminal acts. While Plaintiff is correct that exemplary

damages are recoverable for gross negligence under section 41.003, section 41.005(a) expressly

precludes recovery of exemplary damages against a defendant for harm resulting from an assault

because of a criminal act of a third party.  Tex. Civ. Prac. & Rem. Code Ann. § 41.005(a) (West

2008) ("In an action arising from harm resulting from an assault, theft, or other criminal act, a court

may not award exemplary damages against a defendant because of the criminal act of another.").

Plaintiff's attempt to characterize his gross negligence claim as a request for exemplary damages for Prime Bar's actions or omissions on October 20, 2012, does not take the claim out of 41.005(a)'s reach because the essence of the claim is that he was injured as a result of being assaulted by Browning, another patron at the bar.  Bhatti's contention that Prime Bar failed to intervene or take other action does not change the nature of his claim.

Even if Prime Bar's conduct can be construed as a "concurrent cause of the harm" that Bhatti suffered as a result of Browning's assault, harm of this kind has been held to fall within section 41.005(a)'s bar to exemplary damages.  *See Miles v. Jerry Kidd Oil Co.*, 363 S.W.3d 823, 824 (Tex. App.—Tyler 2012, no pet.) ("We construe Section 41.005 to preclude punishing a defendant for harm resulting from a criminal act of a third party when that defendant's actions are a "concurrent cause of the harm.").  In *Miles*, the court of appeals rejected an argument similar to that made by Bhatti.  Specifically, the court in *Miles* disagreed that section 41.005(a) "allows for exemplary damages to redress an employer's gross negligence when a third party's criminal conduct amounts to a concurrent cause of the same injury."  *Id.*  Like Bhatti, the plaintiff in *Miles* contended that the defendant was indirectly or partially responsible for the injuries suffered by his wife because the defendant's conduct (not having sufficient change on hand in a store where his wife was employed) exposed his wife to a dangerous situation (walking across a busy roadway to obtain change) that ultimately resulted in her being struck and killed by a drunk driver.  *See id.*  Based on the same reasoning in *Miles*, the court concludes that the relief sought by Bhatti is precluded by section 41.005(a).  Further, Bhatti has not established that any of the exceptions to section 41.005(a) apply.

*See* § 41.005(b)-(c).  His request for exemplary damages for Defendants' alleged gross negligence, therefore, fails as a matter of law.

Moreover, as Plaintiff acknowledges, gross negligence requires evidence that the defendant had "actual, subjective awareness of the [extreme degree of] risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others."  *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012).  Bhatti's contention, however, that a Prime Bar representative or representatives actually witnessed and heard what occurred *before* Browning threw the bar glass at Bhatti is not supported by the evidence.  Hines testified that he did not hear Browning yelling at Bhatti, that he had his back to Browning and Bhatti, that the bar was crowded and noisy, and that the only thing he saw when he turned around was Bhatti throwing a drink at Browning and Browning responding by throwing a bar glass at Bhatti. Bhatti himself admitted that the bar area where the incident took place was crowded and noisy, and that loud music was playing.  Bhatti did not know whether Hines heard Browning.

The court must view facts and inferences reasonably drawn from those facts in the light most favorable to the nonmoving party, but "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994) (citation and internal quotation marks omitted). In the absence of proof, a court should not assume that the nonmoving party could or would provide the necessary facts. *Id.* at 1075. Here, while there is undisputed evidence that Hines was close enough to the altercation to get splashed when glasses starting flying, such evidence alone creates only a weak issue of fact as to whether he or any other Prime Bar heard

Browning and was actually, subjectively aware of and consciously ignored an extreme degree of risk to Bhatti in the one to two minute before he was struck with the bar glass.  Without more, Hine's proximity alone is insufficient to raise a genuine dispute of material fact in this regard, particularly in light of the other undisputed evidence.  Additionally, Bhatti fails to explain why evidence of Prime Bar's conduct after Bhatti was struck is relevant to whether Prime Bar was subjectively aware of and consciously ignored an extreme degree of risk to Bhatti in the one to two minute before he was struck with the bar glass by Browning.  Accordingly, for all of these reasons, no genuine dispute of material fact exists regarding Plaintiff's gross negligence claim, and Defendants are entitled to summary judgment as a matter of law on this claim.

H.      IIED Claim (Count VII)

To prevail on an IIED claim, the plaintiff must show that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff's emotional distress; and (4) the emotional distress was severe. *Kroger Texas Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006); *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004); *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003).  A defendant's conduct satisfies the second element only if it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).  "Conduct that is merely insensitive or rude is not extreme and outrageous, nor are 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'"  *Kroger Texas Ltd.*

*P'ship v. Suberu*, 216 S.W.3d at 796 (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)).  Under Texas law, intentional infliction of emotional distress is a "gap-filler" tort that can be used only when "a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress."[9] *Hoffmann–La Roche, Inc.*, 144 S.W.3d at 447.

Defendants focus on the third and fourth elements of Bhatti's IIED claim and contend that they are entitled to judgment on this claim because Bhatti cannot establish that he suffered severe emotional distress as required for such a claim.  Defendants assert that "[t]o date, Plaintiff has not been treated by any mental health professional, received any medical diagnoses, received or been recommended to receive any mental treatment, and has not been diagnosed by any medical doctor or mental health professional [as suffering] from depression, sleep loss, loss of appetite, shame, fear, headaches, or any other physical or mental disorder."  Defs.' Mot. 18.

In response, Plaintiff asserts, without any citation to evidence, that he was "subjected . . . to severe emotional distress," "was in shock" as to the actions or inaction of Prime Bar to Browning's alleged racial slurs and assault.  Bhatti further asserts that he "has suffered and will continue to suffer severe emotional distress, mental anguish, humiliation, and embarrassment."  *Id.* at 22-23. Conclusory or unsubstantiated assertions such as this are not competent summary judgment evidence and are insufficient to create a genuine dispute of material fact.  *See Eason*, 73 F.3d at 1325; *Forsyth*, 19 F.3d at 1533.  Further, the court is under no obligation to comb or scour the record to find support

---

[9] Defendants do not argue in their motion that Plaintiff's IIED claim fails as a matter of law because Bhatti has other  recognized theories of redress against them.  Accordingly, the court does not consider this argument in ruling on Defendants' summary judgment but includes the "gap-filler" quotation to explain the limitations on IIED claims and circumstances under which a plaintiff may assert IIED under Texas law, as this may be relevant to Plaintiff's IIED claim against Browning.

for Plaintiff's response or evidence that creates a genuine dispute as to a material fact. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is the nonmovant's duty to identify evidence in the record that establishes the existence of a genuine dispute of material fact. *Celotex Corporation*, 477 U.S. at 324. When the nonmovant fails to cite or refer to evidence that exists in the summary judgment record, "that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405. Because Bhatti has failed to identify competent summary judgment evidence to support his assertion that he suffered severe emotional distress, he has failed to raise a genuine dispute of material fact as to these elements of his IIED claim, and the Prime Bar Defendants are entitled to judgment as a matter of law on this claim.

## I.     Objections to Summary Judgment Evidence

As noted, Defendants object to Plaintiff's summary judgment evidence on hearsay, speculation, and authentication grounds. The court has only considered evidence that is admissible pursuant to Rule 56 of the Federal Rules of Civil Procedure and the summary judgment standard herein enunciated. Accordingly, the objections are **overruled as moot**, except to the extent specifically addressed in this opinion.

## IV.    Motion to Enforce Scheduling Order

In his Motion to Enforce Scheduling Order (Doc. 64), filed June 30, 2016, Plaintiff requests that the court require the parties to mediate before the trial of this case. According to Plaintiff's motion, the parties have not mediated to date due to oversight. Plaintiff, therefore, requests an extension of the March 4, 2016 mediation deadline. Plaintiff states that he was unable to contact the

Prime Bar Defendants to confer regarding his motion despite multiple attempts to do so, but Browning is unopposed to the motion.

No mediation has taken place. The parties are, therefore, in violation of the court's First Amended Mediation Order (Doc. 41), which was entered November 5, 2015, and required them to mediate by March 4, 2016.  The court fully expects the parties to comply with its orders and will not take kindly to the parties ignoring its orders.  If the failure to mediate was an oversight, the failure should have been brought to the court's attention immediately.  Accordingly, the court **grants** the Motion to Enforce Scheduling Order and **directs** the parties to participate in mediation in accordance with the court's First Amended Mediation Order by **August 15, 2016**.  *Failure to do so will result in sanctions, as the court deems appropriate, against the offending party, attorney, or both*.  The mediator shall submit a report to the court by **August 22, 2016**, and otherwise comply with the requirements set forth in the court's First Amended Mediation Order.

## V.      Conclusion

For the reasons herein stated, the court **grants in part and denies in part** Defendants Concepts America, Inc. c/o Restaurants-America and Prime Bar Greenway, LLC's Motion for Summary Judgment (Doc. 45).  The Motion for Summary Judgment is **granted** with respect to Plaintiff's claim under 42 U.S.C. § 1981 and his state law claims for general negligence, gross negligence, premises liability, and intentional infliction of emotional distress against Defendants Concepts America, Inc. c/o Restaurants-America; Restaurants-America; and Prime Bar Greenway, LLC.  With respect to Plaintiff's claim under 42 U.S.C. § 2000a, the Motion for Summary Judgment is **granted** to the extent the claim is based on disparate impact and **denied** to the extent it is based

on disparate treatment.  Accordingly, Plaintiff's claim under section 2000a against the Prime Bar Defendants based on disparate treatment remains for trial, as well as Plaintiff's claims against Michael Browning for assault and battery and intentional infliction of emotional distress.

Further, the court **grants** the Motion to Enforce Scheduling Order and **directs** the parties to participate in mediation in accordance with the court's First Amended Mediation Order by **August 15, 2016**, as herein set forth.  After mediation, the court will reset the deadline for filing pretrial materials.  The parties' prior failure to comply with the court's First Amended Mediation Order will also require the court to reset the pretrial conference and trial of this case.  Accordingly, pending resolution of the mediation, the court **vacates** the pretrial conference hearing set for July 28, 2016, and the August trial setting.  If the case is not resolved at mediation, it will proceed to trial before the end of the year.

**It is so ordered** this 18th day of July, 2016.


Sam A. Lindsay
United States District Judge